# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| JARED WEEKS, individually, and **)** <br> SAVING ABEL PARTNERS, a **)** <br> Tennessee general partnership, **)** <br> **)** <br>      **Plaintiffs,** **)** <br> **)** <br> v. **)** <br> **)** <br> SCC SPV I, LLC, **)** <br> **)** <br>      **Defendant.** **)** | Case No. |

## COMPLAINT

Plaintiffs Jared Weeks ("Weeks") and Saving Abel Partners (the "Partnership") (collectively, "Plaintiffs") file this Complaint against Defendant SCC SPV I, LLC ("Defendant"), and allege as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Jared Weeks is an individual citizen of Tennessee and resident of Davidson County, Tennessee.

2.      Plaintiff Saving Abel Partners is a general partnership formed under the laws of the State of Tennessee whose sole remaining partner is citizen and resident of Tennessee.

3.      Upon information and belief, Defendant SCC SPV I, LLC is principally located in New York. Its managing member is Stilwell Creative Capital, LLC, which is also principally located in New York. The managing member of Stilwell Creative Capital, LLC is Brian Baum who is an individual citizen of New York.

4. Subject matter jurisdiction is proper with this Court pursuant to 28 U.S.C. § 1332 because this action exceeds the sum or value of $75,000 (exclusive of interest and costs), and is between citizens of different states.

5. This Court has personal jurisdiction over Defendant as it induced a breach of contract pertaining to a Tennessee entity and caused Tennessee citizens and residents to incur damages in Tennessee, and as this action pertains to the ownership or possession of Plaintiffs' interest in property located within Tennessee.

6. Venue is proper with this Court pursuant to 28 U.S.C. § 1391 because the majority of the events or actions related to the lawsuit took place within this judicial district.

## FACTS

7. In or around 2008, Weeks and Jason Null ("Null"), a citizen and resident of Mississippi, formed a *de facto* partnership for performing as a musical group/duo, initially as Shade of Grace and later as Saving Abel.

8. Weeks and Null began writing musical compositions and creating sound recordings together.

9. Shortly after that, Weeks and Null met a Memphis producer by the name of Skidd Mills and the trio began recording music as Saving Abel. This got some traction and a few additional members were added to the band.

10. It was not before long that the band Saving Abel became a huge success—countless sold out shows (even arenas) across the country, hit songs, and significant royalty income to go along with it.

11. In efforts to manage this success, Weeks and Null were advised that a 50/50 partnership between them would be the best form of business entity for the band.

2

12. In or around 2021, Weeks and Null entered into the Partnership Agreement of Saving Abel Partners (the "Partnership Agreement").[1] Pursuant to the same, Null (while he was still a partner in the Partnership) contributed, *inter alia*, the following to the Partnership: "[h]is interest in any exclusive recording agreements, including his exclusive services as a featured recording artist and all sums receivable by a Partner as a result of such services;" and "[h]is interest in Saving Abel." (*See* Partnership Agreement, at Section 7(A)(ii)-(iii)). He also warranted, *inter alia*, that: "he has not done nor will he do any act or thing that will or might impair the full enjoyment by the Partnership of any of the rights granted to it under this Agreement or the commencement or continuation of the Partnership business;" and "he will not sell, assign, transfer, or hypothecate any right, title or interest in or to any asset of the Partnership without the prior written consent of all other Partners." (*See id.*, at Section 6(A)).

13. On or about August 5, 2024, Null breached his warranties and obligations by entering into an Asset Purchase Agreement (the "Purchase Agreement") with Defendant, under which Null purported to sell to Defendant record royalties from UMG and worldwide digital performance royalties from SoundExchange.[2] Null had no right to sell these assets. Pursuant to Sections 6(A) and 7(A)(ii)-(iii) of the Partnership Agreement, these royalties are Partnership assets. The Partnership did not authorize Null to sell to anyone (including Defendant) the record royalties from UMG and worldwide digital performance royalties from SoundExchange. Moreover, UMG is and has been contractually obligated to pay record royalties earned from the exploitation of Saving Abel sound recordings to the Partnership. They are owned by the Partnership, not Mr. Null. As such, the Partnership is exclusively entitled to collect such royalties.

---

[1] A copy of the Partnership Agreement is attached hereto as **Exhibit A**.
[2] A copy of the Purchase Agreement is attached hereto as **Exhibit B**.

3

14. Defendant knew or should have known of the Partnership's ownership interest in the record royalties from UMG and worldwide digital performance royalties from SoundExchange. Section 3(c) of the Purchase Agreement states: "Vendor represents that Vendor's shares in and to the Purchased Assets are confirmed and not subject to modification with respect to any coauthors of any musical compositions or master recordings, including without limitation, with respect to Jared Weeks, and that no such person shall have any rights to the Purchased Assets or in connection with this Agreement." Likewise, Section 3(d) of the Purchase Agreement states: "Vendor represents and warrants that no other person, including without limitation Jared Weeks has any rights with respect to the Purchased Assets or otherwise in connection herewith." Defendant failed to conduct basic due diligence to determine whether these representations about Weeks were true—they were not. Defendant did not ask, inquire, notify, or have discussions with the Partnership about any aspect of the Purchase Agreement before it was executed.

15. Despite this, Defendant has converted the Partnership's property to its own use.

16. The Partnership has demanded the return of its property, and Defendant has refused to return it.

17. Plaintiffs suffered and will continue to suffer significant financial damages as a result of Defendant's misconduct.

**COUNT I:**
**INDUCEMENT OF BREACH OF CONTRACT**
**(Plaintiffs v. Defendant)**

18. Plaintiffs incorporate herein by reference the above paragraphs, inclusive, as though fully set forth herein.

19. At all times mentioned herein, the Partnership Agreement was a valid contract between Null and Weeks. Pursuant to this agreement, Null contributed to the Partnership record

4

royalties from UMG and worldwide digital performance royalties from SoundExchange. As they are Partnership assets, Null warranted that he would not sell these royalties absent express authorization from the Partnership.

20. Defendant knew or should have known of the Partnership Agreement. The Purchase Agreement specifically names Weeks and makes representations about him and his rights to the purchased royalties.

21. Nevertheless, Defendant intentionally and with an improper motive caused Null to breach the Partnership Agreement by entering into the Purchase Agreement with Defendant on August 5, 2024, under which he purported to sell to Defendant record royalties from UMG and worldwide digital performance royalties from SoundExchange. Null had no right to sell these assets. Pursuant to Sections 6(A) and 7(A)(ii)-(iii) of the Partnership Agreement, these royalties are Partnership assets. The Partnership did not authorize Null to sell to anyone (including Defendant) the record royalties from UMG and worldwide digital performance royalties from SoundExchange. Moreover, UMG is and has been contractually obligated to pay record royalties earned from the exploitation of Saving Abel sound recordings to the Partnership. They are owned by the Partnership, not Mr. Null. As such, the Partnership is exclusively entitled to collect such royalties.

22. Defendant had no justification for inducing Null's breaches.

23. Plaintiffs suffered and will continue to suffer significant financial damages as a result of Defendant's inducement of breach.

24. Defendant is, therefore, liable to Plaintiffs for these damages, as well as treble damages under T.C.A. §47-50-109.

5

25.     Defendant's acts were intentional, fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for the Partnership's interests and, as a result, Defendant is liable for punitive damages.

**COUNT II:**
**CONVERSION**
**(Partnership v. Defendant)**

26.     Plaintiffs incorporate herein by reference the above paragraphs, inclusive, as though fully set forth herein.

27.     The Partnership was and still is the rightful owner of the record royalties from UMG and worldwide digital performance royalties from SoundExchange, and is entitled to possession of that property.

28.     Defendant knew or should have known of the Partnership's ownership of the record royalties from UMG and worldwide digital performance royalties from SoundExchange.

29.     The Partnership did not authorize Null to sell the record royalties from UMG and worldwide digital performance royalties from SoundExchange.

30.     Defendant did not ask, inquire, notify, or have discussions with the Partnership about any aspect of the Purchase Agreement before it was executed.

31.     Defendant converted the Partnership's property to its own use.

32.     The Partnership has demanded the return of its property, and Defendant has refused to return it.

33.     The Partnership suffered and will continue to suffer significant financial damages as a result of Defendant's conversion.

34.     Defendant knew of the probable consequences of its acts and omissions but deliberately failed to avoid these consequences.

6

35. Defendant's acts were intentional, fraudulent, malicious, unconscionable and oppressive, and were undertaken with conscious disregard for the Partnership's interests and, as a result, Defendant is liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

1. For an Order requiring Defendant to pay to Plaintiffs all record royalties from UMG and worldwide digital performance royalties from SoundExchange that Null purported to sell to Defendant;

2. For an Order requiring Defendant to account for all payments relating to the record royalties from UMG and worldwide digital performance royalties from SoundExchange that Null purported to sell to Defendant;

3. For damages in an amount to be proved at trial;

4. For treble damages under T.C.A. §47-50-109;

5. For punitive damages;

6. For attorney's fees;

7. For costs of suit; and

8. For such other relief as the Court deems just and proper.

Respectfully submitted,

_/s/ Jay S. Bowen_
Jay S. Bowen, TN BPR No. 002649
Jacob T. Clabo, TN BPR No. 036760
Kaitlin E. White, TN BPR No. 037655
**Buchalter, A Professional Corporation**
1 Music Circle South, Suite 300
Nashville, TN 37203
Telephone: (629) 224-6600
jbowen@buchalter.com
jclabo@buchalter.com
kwhite@buchalter.com

*Attorneys for Plaintiffs*

8